## UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**RICHARD G. BIRCHALL**,                      Chapter 7
      Debtor                                    Case No. 07-13232-WCH

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matters before the Court are the "Emergency Motion for Determination that Automatic Stay Does Not Apply to Debtor's Current Incarceration,"filed by Suzanne D'Amour (the "Creditor" or "D'Amour") and the "Debtor's Motion Brought on An Expedited Basis to Order Judgment Creditor to Forthwith Take All Steps Necessary to Secure the Immediate Release of Debtor from Incarceration."  The motions raise several issues: 1) Whether 11 U.S.C. § 362(a) applies, thereby requiring D'Amour, a judgment creditor of  Richard G. Birchall (the "Debtor"), to take all steps necessary to obtain the release of the Debtor from his present incarceration in the Barnstable County Jail and House of Correction for civil contempt; or 2) Whether the actions taken by the Creditor in

-1-

pursuing contempt in her supplementary process action pending in Orleans District Court

in aid of collection of a Superior Court judgment are excepted from the automatic stay

under one of the provisions of 11 U.S.C. § 362(b).

The Creditor argues that the automatic stay is inapplicable to her actions.

Alternatively, she maintains that she is entitled to relief from stay, an order of dismissal,

or an order of abstention in the Debtor's bankruptcy case.  The Debtor contends that the

automatic stay applies to the supplementary collection and civil contempt proceedings

brought by the Creditor and that the other relief requested by the Creditor is unwarranted

and inappropriate at the early stages of his bankruptcy case, which he filed on May 23,

2007.

On June 22, 2007, this Court conducted a hearing on Creditor's motion, which she

supplemented on June 6, 2007, as well as the Debtor's motion.  Following the hearing, the

Court afforded the parties the opportunity to submit affidavits and relevant evidence.

Upon consideration of the representations of the parties and the evidence submitted and

for the reasons set forth below, the Court shall enter an order denying the Creditor's

motion and granting the Debtor's motion.

The material facts necessary to resolve the issues are not in dispute.  Neither party

requested an evidentiary hearing.  The following constitute findings of fact and conclusions

of law in accordance with Fed. R. Bankr. P. 7052.

## II.  BACKGROUND

In March, 1993, Robert D'Amour, the Creditor's husband, was murdered.  The

Creditor was the beneficiary of Robert D'Amour's life insurance policy and entitled to its proceeds upon his death (the "Proceeds"). The Creditor employed the Debtor, a former attorney, to assist her with her grand jury testimony and the investment of the Proceeds. In February, 1996, the Creditor, who had been indicted on murder charges, was acquitted on the charge of murdering her husband. She was convicted, however, on two counts of perjury and one count of attempting to procure perjury, and she received a ten to twelve year sentence.

In December, 2000, the Creditor sued in the Debtor in the Barnstable Superior Court, Department of the Trial Court, alleging, *inter alia*, that he had converted the Proceeds and breached his fiduciary duty toward her. (D'Amour v. Birchall, Case No. 00-00-772). In February, 2005, she obtained a default judgment against the Debtor as to liability only. Several months later, in June, 2005, the state court assessed damages against the Debtor in the amount of $2,752,934.54.

In July, 2006, the Supreme Judicial Court disbarred the Debtor from the practice of law. His disbarment was predicated upon facts which were deemed admitted because the Debtor failed to respond to discovery requests of the Massachusetts Board of Bar Overseers.

In December, 2006, the Creditor brought a Supplementary Process proceeding against the Debtor in the District Court Department, Orleans Division, Barnstable County, to collect her judgment. (D'Amour v. Birchall, Case No. 2006-26SP000214, hereinafter the "Proceeding"). In the Proceeding, the state court issued a capias, followed by an amended

capias.  On April 19, 2007, the Debtor appeared before the Hon. J. Gregory Williams, who incarcerated him on that same day pursuant to the capias.   Judge Williams ordered the Debtor held in contempt and to be bailed only by a Master in Chancery.

The docket from the Proceeding reflects that Judge Williams held several hearings in late April and early May, 2007  On May 8, 2007, he issued a "Memorandum, Findings, and Order" in which he determined that the Debtor had the ability to pay the judgment and ordered him to do so.   Judge Williams  found that the Debtor had "expended considerable time and energy in creating ways to render his assets, and those of others, such as D'Amour's, difficult to trace and locate."  He further found that the Debtor was reluctant to reveal his assets, failed to abide by orders during his bar disciplinary proceedings, and frequently invoked his right against self-incrimination.  Judge Williams noted that the Debtor did not account for the Creditor's money, except for defense costs for her trial, and he concluded that the Debtor's testimony with respect to assets was incredible.

Also on May 8, 2007, Judge Williams  issued "Memorandum and Order Regarding Fraud Charges Brought Pursuant to G.L. c. 224, § 19", a separate decision regarding the charge of fraud which the Creditor had filed in the Proceeding.  In that memorandum, Judge Williams found the Debtor had  converted the Creditor's funds and concealed funds entrusted to him.  Additionally, Judge Williams noted the Debtor's recalcitrance in refusing to comply with orders of the Barnstable Superior Court from February 2004 until February 2005 and to comply with similar requests during his bar disciplinary proceedings.  Having

-4-

found the Debtor guilty of fraud, Judge Williams sentenced the Debtor to 30 days in the Barnstable County Jail and House of Correction with credit for 20 days served.  The Debtor has served that sentence.

On May 22, 2007, Judge Williams found the Debtor in civil contempt and ordered him to be committed to the Barnstable County Jail "in lieu of $2,854,542.74 bail" pending a continued hearing on June 4, 2007.

 On May 23, 2007, the Debtor filed a skeletal Chapter 7 petition commencing this case together with a Certificate of Credit Counseling.  The Debtor did not file his Schedules and Statement of Financial Affairs.  On his petition, however, he estimated the number of his creditors between one and fifty, the value of his assets between $0 and $10,000, and the extent his liabilities between $1,00,001 and $100,000,000.  In his mailing matrix containing the list of his creditors, the Debtor included the names of twenty-six creditors and interested parties.   The United States Trustee scheduled the first § 341(a) meeting of creditors for June 20, 2007 and appointed David Madoff, Esq. the Chapter 7 Trustee. On June 12, 2007, the Court entered an order granting the Chapter 7 Trustee's application to employ Madoff & Khoury, LLP as his counsel.

Although on May 25, 2007, the Court entered an order requiring the Debtor to file Schedules, the Statement of Financial Affairs and other documents by June 25, 2007, the Court, at the Debtor's request, granted him an extension of time to file the required documents to July 20, 2007.  The Chapter 7 Trustee did not conduct the § 341(a) meeting on June 21, 2007 due to the Debtor's incarceration.

During the first days of his bankruptcy case, the Debtor filed a Suggestion of Bankruptcy with the Orleans District Court, together with a request that he be released from incarceration in the Proceeding. Judge Williams held a hearing on May 24, 2007, one day after the filing of the petition, at which the parties presented arguments concerning the applicability of the automatic stay. Judge Williams took the Debtor's request under advisement. On May 25, 2007, Judge Williams issued his "Memorandum, Findings, and Order on 'Motion [Of Defendant] for Release of Debtor From Civil Collection Enforcement Proceeding (i.e., from Non-Sentenced Incarceration).'" Judge Williams, citing <u>Cournoyer v. Town of Lincoln</u>, 790 F.2d 971, 974 (1st Cir. 1986), denied the Debtor's motion without prejudice, observing that he had found no authority that compelled him to release a debtor incarcerated for civil contempt by virtue of the debtor's bankruptcy filing. He observed that the Creditor had filed a motion for a determination of the same issues in the bankruptcy court.

On June 22, 2007, this Court held a hearing on the Creditor's motion and supplement. In those pleadings and during the hearing, the Creditor argues that the Debtor "will flee the jurisdiction" if he is released from his current incarceration. She avers that the Debtor represented to her in 2000 that he held several different passports in different names. After the hearing, counsel to the Creditor provided the Court with electronic recordings of telephone conversations the Debtor had while in jail. Although most of the conversations are irrelevant to the issues before the Court, some of the conversations were revealing as to the Debtor's intention to leave Massachusetts. In

recorded telephone conversations with his spouse, a resident of New York state, the Debtor stated that after his release he wished to leave Cape Cod, his long-time home, and stay in Brooklyn, New York, temporarily, before moving to Florida. In telephone calls to various friends, the Debtor made arrangements for retrieving his computer, briefcases, and personal items. In one conversation, the Debtor suggested that "they" [presumably his creditors] could search all they wanted to and would not find anything. In one very suspicious conversation, he asked one friend to ask another to contact unidentified individuals, whose names were located on several cards in the his wallet, and to use certain code words in contacting the unidentified individuals. It was not entirely clear what the Debtor was asking his friend to do, although the Debtor was seeking to conceal the nature of his requests from third parties.

During the hearing on her pleadings, the Creditor's attorneys referred to the appointment of a state court receiver for the Debtor. She provided no details about the receivership, however, or any efforts the receiver may have made to locate the Debtor's assets. Whatever its status, the receivership proceeding was stayed by the commencement of the bankruptcy case.

Subsequent to the hearing and in addition to the recordings of the telephone conversations, the Debtor and Creditor filed affidavits in support of their motions. Thereafter, I took the matter under advisement.

## III. POSITIONS OF THE PARTIES

### A. The Debtor

The Debtor seeks a determination that the automatic stay applies to the Proceeding. He seeks an order compelling the Creditor to obtain his immediate release from jail.  He asserts that the basis for his current incarceration is not criminal in nature, pointing out that he completed his 30-day sentence for criminal fraud, that the order leading to his current incarceration was civil in nature, and not for the purpose of upholding the dignity of the court.  He emphasizes that his bankruptcy case is the proper method for determining the rights of all his creditors, including D'Amour.

### B. The Creditor

D'Amour argues that the automatic stay provisions do not apply to the Debtor's incarceration. She cites In re Maloney, 204 B.R. 671, 674 (Bankr. E.D. N. Y. 1996), a case in which the bankruptcy court entered orders to punish a debtor for violating previous orders in a divorce case, in support of her assertion that criminal contempt orders are excepted from the scope of the automatic stay.  The Creditor maintains that the orders of the Orleans District Court were punitive measures designed to preserve the authority and dignity of the court without regard to the civil dispute between the Debtor and the Creditor, and thus come within the criminal proceedings exception to the automatic stay.

In the alternative, in the event that this Court were to determine that the automatic stay applies, D'Amour seeks emergency relief from stay under 11 U.S.C. § 362(f) to maintain the Debtor's incarceration which she argues is necessary to prevent irreparable

damage to her property interests. She points out that both the Orleans District Court and the Supreme Judicial Court have found that the Debtor misappropriated her assets. D'Amour argues that if the Debtor is released from incarceration, he will flee the United States, and she will be unable to satisfy her judgment against the Debtor. As further alternative remedies, the Creditor asks the Court to dismiss the Debtor's Chapter 7 case either through abstention under 11 U.S.C. § 305 or dismissal under § 11 U.S. C. § 707. Pointing to the Debtor's history and pattern of failing to account for funds and secreting assets in offshore accounts, the Creditor maintains that the Debtor did not commence this case for any legitimate bankruptcy purpose. Moreover, she asserts that her judgment will be declared nondischargeable under 11 U.S.C. § 523(a)(4) and the Debtor's pending bankruptcy case will not assist him with respect to her judgment.[1] The Creditor requests this Court to allow the Proceeding to continue.

## IV. JURISDICTION

This Court has jurisdiction over the parties and the subject matter of this proceeding under 28 U.S.C. §§ 1334, 151 and 157. This is a core proceeding under 11 U.S.C. § 157(b)(2)(A) and (G), as the Court is required to determine the applicability of the automatic stay to the Creditor's collections efforts and to determine the Creditor's request to dismiss the bankruptcy case.

---

[1] The docket in this case reflects that no adversary proceeding has been filed in the Debtor's case.

**V. DISCUSSION**

    A.  <u>Automatic Stay and Exceptions</u>

Section 362 of the Bankruptcy Code provides for an automatic stay to operate upon the filing of a bankruptcy petition and to enjoin a broad range of actions.  It provides in pertinent part the following:

> (a) Except as provided in subsection (b) of this section, a petition . . . operates as a stay, applicable to all entities, of - -
>
> > (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> >
> > (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
> >
> > (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; . . .
> >
> > (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; . . . .

11 U.S.C. § 362(a).  As a result of the broad scope of the automatic stay, proceedings supplementary to judgment, including civil arrest, are stayed.  L. King, et al., 3 *Collier On Bankruptcy*, ¶ 362.03[4], at 362-19 (15th ed. rev. Supp. 2007)(hereinafter, "Collier").

The automatic stay is designed to give the debtor breathing space and to protect property against piecemeal liquidation so that the estate representative can collect and

distribute property of the estate to creditors in the manner set forth in the Bankruptcy Code. Collier, ¶ 362.03, at 362-13. It goes into effect upon the filing of a bankruptcy petition, and it serves as broad protection against collection efforts by creditors and interference with the bankruptcy estate, in furtherance of the many policies of the United States Bankruptcy Code. These policies include a single collective forum for recovering and determining issues relating to a debtor's assets and liabilities and the distribution of the proceeds of liquidated assets to creditors in accordance with the Bankruptcy Code's priority scheme and rules for the allowance of claims; as well as a fresh start for the honest debtor. To effectuate these goals in a Chapter 7 liquidation case, the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure establish an elaborate system for implementing these policies, including: 1) requirements that debtors perform various duties, *see, e.g.* 11 U.S.C. § 521; 2) powers given to estate representatives to obtain and recover debtors' assets and sell them if appropriate, *see, e.g.*, 11 U.S.C. §§ 363, 542 *et seq.;* and 3) powers given to creditors, such as the right to examine debtors and anyone who has knowledge of their finances, claims determination, and the right to initiate proceedings to determine debtors' entitlement to a discharge or the dischargeability of particular debts, *see, e.g.*, 11 U.S.C. §§ 341(a), 523, 727, Fed. R. Bankr. P. 2004.

The United States Court of Appeals for the First Circuit, in describing the scope and nature of the stay, has stated:

> The automatic stay is among the most basic of debtor protections under bankruptcy law. *See* <u>Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection</u>, 474 U.S. 494, 503, 106 S.Ct. 755, 760, 88 L.Ed.2d 859 (1986); *see also* S.Rep. No. 95-989, at 54 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840. It

is intended to give the debtor breathing room by "stop[ping] all collection efforts, all harassment, and all foreclosure actions." H.R.Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296-97; *see also* <u>Holmes Transp.</u>, 931 F.2d at 987; <u>In re Smith Corset Shops, Inc.</u>, 696 F.2d 971, 977 (1st Cir.1982).

The stay springs into being immediately upon the filing of a bankruptcy petition: "[b]ecause the automatic stay is exactly what the name implies-'automatic'-it operates without the necessity for judicial intervention." <u>Sunshine Dev., Inc. v. FDIC</u>, 33 F.3d 106, 113 (1st Cir.1994). It remains in force until a federal court either disposes of the case, see 11 U.S.C. § 362(c)(2), or lifts the stay, *see* <u>id.</u> § 362(d)-(f). This respite enables debtors to resolve their debts in a more orderly fashion, *see* <u>In re Siciliano</u>, 13 F.3d 748, 750 (3d Cir.1994), and at the same time safeguards their creditors by preventing "different creditors from bringing different proceedings in different courts, thereby setting in motion a free-for-all in which opposing interests maneuver to capture the lion's share of the debtor's assets." <u>Sunshine Dev.</u>, 33 F.3d at 114; *see generally* 3 Collier on Bankruptcy ¶ 362.03 (15th rev. ed. 1996).

<u>Soares v. Brockton Credit Union (In re Soares)</u>, 107 F. 3d 969, 975 (1st Cir. 1997).

Actions taken in violation of the stay are void, <u>id.</u> at 976, although the bankruptcy court may lift the stay retroactively and validate actions which would otherwise be void in appropriate circumstances. <u>Id.</u> at 976-77. Because bankruptcy law forbids creditors from continuing judicial proceedings against debtors, it is the creditor's obligation to inform other courts of the situation. <u>Id.</u> at 978. Where another court issues an order in violation of the stay, that order is invalid, absent bankruptcy court retroactive approval of the order. <u>Id.</u>

The stay is not unlimited, however, and many types of actions are excepted from its broad scope. Section 362(b) provides a list of exceptions to the stay, which are ". . . precise and intentional and must be carefully considered in light of the inclusive nature of section

362(a)."  Collier, ¶362.05, at 362-46 (citations and footnotes omitted).  "Exceptions to the stay should be read narrowly." Id.

Section 362(b)(1) excepts from the automatic stay criminal proceedings against the debtor, in recognition that bankruptcy is not a shelter for wrongdoers from the consequences of criminal acts.  See Younger v. Harris, 401 U.S. 37, 46(1971); Fussell v. Price (In re Fussell), 928 F.2d 712 (5th Cir. 1991).  The exception to the automatic stay for criminal proceedings covers interference with criminal, not civil, proceedings.  Thus, a criminal court may jail, fine, or order restitution from a debtor in a criminal proceeding but may not jail a debtor to enforce and collect a civil judgment.

Section 362(b)(4) further excepts from the automatic stay actions and proceedings to enforce police or regulatory powers of governmental units, or an organization exercising authority under the Chemical Weapons Convention.  11 U.S.C. § 362(b)(4). The policies underlying the exception are to protect the public to prevent bankruptcy from being a haven for wrongdoers. Collier, ¶ 362.055][a] at 362-56.   The exception allows "governmental units" to enforce regulatory laws and permits them to pursue, for example, enforcement of environmental laws, state bar disciplinary proceedings, employment discrimination actions, labor law proceedings, rent regulation enforcement, or water control standards.   The term "governmental unit" is defined in the Bankruptcy Code as "the United States; State; Commonwealth; District; Territory; municipality; foreign state; department; agency or instrumentality of the United States, . . . a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic

-13-

government." 11 U.S.C. § 101(27).  For this exception to apply, the governmental unit must

bring the action in its capacity as a regulator, or a private party acting as a private attorney

general.  *See* Cournoyer v. Town of Lincoln, 790 F.2d 971, 974 (1st Cir. 1986); Corporacion

de Servicios Medicos Hospitalarios de Fajardo v. Mora (In re Corporacion de Servicios

Medicos Hospitalarios de Fajardo),  805 F.2d 440 (1st Cir. 1986). *See also* Javens v. City of

Hazel Park (In re Javens), 107 F.3d 359 (6th Cir. 1997).  In other words, the government

must be seeking to enforce regulatory laws, not contractual rights.

In Javens, the Sixth Circuit discussed the distinction between the allowable and

improper exercise of police and regulatory power in its discussion of leading cases.  It

stated:

> In Cournoyer, the defendant town had obtained, pursuant to its zoning
> ordinances, state court orders allowing it to remove and sell used truck parts
> in Cournoyer's salvage yard. Cournoyer, the debtor, sought to enforce an
> automatic stay to prevent the town from proceeding. The district court
> decision in the case discussed in detail whether a § 362(a)(3) stay arose in the
> case, and in an analysis citing Missouri [State of Mo. v. U.S. Bankr. Ct., 647
> F.2d 768 (8th Cir. 1981)]but presaging Beker [Beker Indus. Corp. v. Florida
> Land and Water Adjudicatory Comm. (In re Beker Indus. Corp.), 57 B.R. 611
> (Bankr. S.D.N.Y. 1986)], concluded that the removal and disposal of the truck
> parts were not acts to obtain possession or control of the debtor's property.
> "[S]uch a characterization is inappropriate, and has been rejected, because of
> the justification underlying the governmental action. . . . [T]he sole
> motivation for the official action . . . is to stop the debtor from operating a
> business in violation of state or local law. [The government has] no pecuniary
> interest in the debtor's property, nor does the law under which it proceeds
> attempt to protect any other party's pecuniary interest." 53 B.R. at 483.
> Without identifying the particular subsection of § 362(a) from which an
> automatic stay arose, the First Circuit held that the § 362(b)(4) and (5)
> exceptions applied.

> In opposition to Cournoyer, Javens heavily relies on Hillis Motors, Inc. v.
> Hawaii Automobile Dealers' Ass'n, 997 F.2d 581 (9th Cir.1993).  In that case,

a Hawaii government agency (the "DCCA") dissolved Hillis Motors, a Hawaii corporation, for failing to file annual exhibits and pay filing fees as required by Hawaii law. At the time of the dissolution, Hillis Motors was a Chapter 11 debtor, and argued that the DCCA's action should have been automatically stayed. The district court held that § 362(a)(3) did not apply, because the DCCA's action concerned not Hillis Motors's property, but its status. The Ninth Circuit reversed, stating:

> There is no question that the DCCA exercised control over Hillis' corporate property by involuntarily dissolving Hillis. When a corporation is involuntarily dissolved by the DCCA, that action serves to vest legal and equitable title to all corporate property in the stockholders.... Thus, the effect of Hillis' dissolution was to transfer all corporate property to the stockholders. Since all corporate property also passes to the estate when a bankruptcy petition is filed . . . there is also no doubt that . . . the DCCA exercised control over property that belonged to the estate just following the commencement of Hillis' bankruptcy case.

Id. at 586-87. The court held that the DCCA's action was stayed by § 362(a)(3), for which there was no exception. Hence the dissolution was void *ab initio*, and Hillis Motors remained a corporation with standing to sue the defendant.

107 F.3d at 369 (footnotes omitted).

Courts which recognize that a civil contempt order is within the scope of the automatic stay do so based upon the plain language of the statute, and the mandate for narrow construction of exceptions. *See, e.g.*, In re Daniels, 316 B.R. 342, 348-9 (Bankr. D. Idaho 2004)("creditor's use of the state court contempt proceedings was in furtherance of its collection action; even though arrest warrant was issued prebankruptcy, maintenance of that collection action in the form of the potential enforcement of the arrest warrant was prohibited by operation of the automatic stay once the bankruptcy case was commenced); Goodman v. Albany Realty Co. (In re Goodman), 277 B.R. 839, 842 (Bankr. M.D. Ga. 2001)

("Therefore, even if the warrant were based on Debtor's disrespect for the superior court, it is still being used as a collection device.  As a result, the Court concludes that the arrest warrant is covered by the automatic stay."); In re Allison, 182 B.R. 881, 886 (Bankr. N.D. Ala. 1995).

Some courts have ruled that state court civil contempt orders entered primarily to uphold the dignity of the court are not within the scope of the automatic stay.  *See, e.g.,* NLRB v. Sawulski (In re Sawulski), 158 B.R. 971 (E.D. Mich. 1993); Lowery v. McIlroy & Millian (In re Lowery), 292 B.R. 645 (Bankr. E. D. Mo. 2003).   These courts base their rulings on the belief that the automatic stay provisions were not intended to deprive state courts of the ability to compel compliance with their orders.  In re Lincoln, 264 B.R. 370, 374 (Bankr. E.D. Pa. 2001).

In this Court's view, the  cases holding that a civil contempt proceedings are stayed are better reasoned because they are supported by the plain language of the statute and the legislative policy in favor of a narrow interpretation of the exceptions to the automatic stay. In the present case, the action taken by the Creditor and the order of the Orleans District Court with respect to the capias were in the nature of civil contempt.  The contempt proceeding was initiated by a private party, the Creditor, to coerce the Debtor's compliance with his duty to provide information about his assets and liabilities and in furtherance of collection of her judgment.  D'Amour's goal was and is to obtain payment of the civil judgment.  Moreover, the district court's order specifically stated that it was a civil contempt order.  It was obtained as a tool to enforce the Creditor's judgment in the

Proceeding.  Further, the order allowed the Debtor to purge himself of the contempt only by paying the judgment.  These actions were and are within the scope of the automatic stay.

This Court rejects the Creditor's argument that to the extent the contempt order of incarceration was issued because of the Debtor's disregard for the dignity of the district court, the Creditor's actions and the order should be excepted from the automatic stay. The arrest and incarceration were to enforce the judgment, not to punish the Debtor for disobeying a court order.   As the incarceration is within the scope of the automatic stay, the Creditor must take steps in the Orleans District Court to ensure that the incarceration for civil contempt is no longer enforced and that the Debtor is released from incarceration.

B. Relief from the Automatic Stay

Section 362(d) confers on the bankruptcy court power in circumstances to terminate, modify or place conditions on the stay.  One such circumstance to obtain relief from stay is when there is "cause, including the lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1).   Cause for relief from stay may include recovery of embezzled property if the creditor/movant is able to trace funds and prove that such funds were never property of the debtor's bankruptcy estate.  *See* Kitchen v. Boyd (In re Newpower), 233 F.3d 922 (6th Cir. 2000).  The Creditor has not made such a showing at this time.[2]

---

[2]  The Creditor explained that she was seeking relief based upon 11 U.S.C. § 362(f). Section 362(f) provides a procedure for emergency relief from stay: "Upon request of a party in interest, the court, with or without a hearing, shall grant such relief

In the present case, the Creditor has not shown that she is presently entitled to relief from the automatic stay to pursue her judgment against the Debtor.  Her claim is an unsecured claim, not the subject of a lien, and this Court has not ruled that it is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).  Accordingly, the Creditor has not shown "cause" for the stay to be lifted.  The Creditor has shown either that she has an interest in specific property that is likely to be damaged or an ability to trace funds belonging to her to specific property.

The Creditor seeks relief from stay to continue the Debtor's incarceration based on her concern that if the Debtor is released from incarceration he will flee the United States. The evidence submitted by the Creditor conclusively established that is the Debtor's intent to move to Florida.  Moreover, the Debtor has exhibited a clear pattern of ignoring court orders and proceedings, and he has failed to respond to legitimate inquiries about his assets.  The audiotapes of the Debtor's conversations in jail raise legitimate concern about his intentions, and his potential misuse of his bankruptcy case to obtain his release from incarceration without the concomitant intent to fulfill his duties as a debtor.  As discussed below, this Court shall enter orders requiring the Debtor to remain in the District of Massachusetts, to perform his obligations as a Debtor, and to cooperate with the Trustee, failing which his case shall be dismissed, in which event the Creditor will be free to pursue

---

from the stay provided under subsection (a) of this section as is necessary to prevent irreparable damage to the interest of an entity in property, if such interest will suffer such damage before there is an opportunity for notice and a hearing . . . ." 11 U.S.C. § 362(f).  The Court understands the grounds for relief to be based upon 11 U.S.C. § 362(d)(1).

her judgment and supplementary remedies free from the constraint of the automatic stay. *See* 11 U.S.C. § 362(c).

In view of the evidence presented that the Debtor wishes to leave Massachusetts and the inferences which may be drawn from the Debtor's past conduct, coupled with district court's findings as to the Debtor's concealment of assets, this Court can infer that the Debtor may be utilizing the bankruptcy court to avoid his disclosure obligations to the Creditor. Accordingly, because of the unique circumstances of this case, the Court will grant partial relief from stay to the Creditor for the limited purpose to request from the Orleans District Court, on an emergency basis the issuance of an electronic monitoring device to be worn by the Debtor to ensure his continued presence in Massachusetts. The balance of the Creditor's motion is denied without prejudice to renewal at a time when she can allege and prove an interest in property which deserves adequate protection.

C.  Dismissal and Abstention

Bankruptcy Code § 707 (a) provides that this Court may dismiss a case only for cause, including unreasonable delay by the Debtor that is prejudicial to creditors, nonpayment of fees, or failure to file the documents and information required by section 521. 11 U.S.C. § 707(a). Bankruptcy Code § 305 provides that the Court may dismiss a case or suspend proceedings in a case if the interests of creditors and the debtor would be better served by such dismissal or suspension. 11 U.S.C. § 305 (a).

The Creditor has not shown cause for dismissal under either section, and, at this early stage of the case, where the Court has granted an extension of time to the Debtor to

file his Schedules and other documents, and where the meeting of creditors has not yet been conducted by the Chapter 7 Trustee, dismissal is premature. The Debtor has shown, at least preliminarily, that he has substantial debt in addition to the Creditor's judgment, and that he needs and is entitled to bankruptcy relief. Although his creditors, including D'Amour, may file complaints to deny the Debtor his discharge or to except their debts from discharge, such determinations can be made only after the appropriate opportunity for a hearing, and, in the absence of default, the Court must make findings of fact and conclusions of law under 11 U.S.C. §§ 727 or 523.

Several of the Debtor's conversations with friends during his incarceration raise legitimate concerns about transfers of assets, although the facts are far from clear. There is no basis in the current record to find that the Debtor is a "flight risk" from the United States, although he has indicated his desire to leave Massachusetts. To protect the ability of the Chapter 7 Trustee and creditors to investigate and locate the Debtor's assets, the Court shall order the Debtor to remain in the Commonwealth of Massachusetts until further order and to surrender his passport to the Chapter 7 Trustee. The Court shall order the Trustee to immediately reschedule the § 341(a) meeting of creditors within two (2) days after the existing deadline for the filing of the Debtor's Schedules and Statements.

Based on the Debtor's suspicious telephone conversations in jail, a further investigation of his conduct while incarcerated is warranted, and the Trustee shall forthwith obtain possession of all property of the estate. The Court observes that any postpetition transfers by the Debtor of property of the estate would warrant denial of his

-20-

discharge.   Moreover, if the Debtor fails to perform his duties, his case will be dismissed, and the Creditor can immediately renew her efforts to collect her judgment.  The Court notes that it is in the Debtor's interests to make his required disclosures of assets and liabilities, perform his obligations, and cooperate with the Trustee, as he will not obtain any benefit from this bankruptcy case absent fulfillment of his duties as a debtor.

## VI. CONCLUSION

Based upon the above findings and rulings, the Court , the Court grants the Debtor's Motion to Order Judgment Creditor to Forthwith Take All Steps Necessary to Secure the Immediate Release of Debtor from Incarceration.  The Court grants partial relief from stay to the Creditor for the limited purpose of obtaining from the Orleans District Court an electronic monitoring device to be worn by the Debtor to ensure his continued presence in Massachusetts.   The balance of the Creditor's Emergency Motion is denied without prejudice to renewal at a time when she can allege and prove an interest in property which deserves adequate protection or cause for dismissal or abstention.

By the Court,

Joan N. Feeney

Joan N. Feeney
United States Bankruptcy Judge

Dated: July 3, 2007
cc: Richard J. Cohen, Esq., Pamela A. Harbeson, Esq., David B. Madoff, Esq.